## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KENNETH SNYDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-CV-2723 JAR/DJW** |
| | ) | |
| **WILLIAM JOHNSON, individually;** | ) | |
| **ERIC CLARK, individually; and** | ) | |
| **UNIFIED GOVERNMENT OF WYANDOTTE** | ) | |
| **COUNTY/ KANSAS CITY d/b/a BOARD OF** | ) | |
| **PUBLIC UTILITIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Kenneth Snyder filed this lawsuit against Defendants William Johnson, Eric Clark, and Unified Government of Wyandotte County/ Kansas City d/b/a Board of Public Utilities ("BPU"), alleging violations of the Uniform Services Employment and Re-employment Rights Act ("USERRA").[1]  This matter is before the Court on a Motion to Dismiss (Doc. 8), filed by Defendants Johnson and Clark pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants Johnson and Clark argue that they are not employers as defined by the USERRA and so are not amenable to suit under that statute.  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the Court denies Defendants' motion to dismiss.

## I.   **Legal Standard**

To survive a motion to dismiss, a complaint must present factual allegations, assumed to

---

[1]38 U.S.C. §§ 4301–4333.

1

be true, that "raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face."[2]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an

_____

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5]*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7]*Id.*

[8]*Id.* at 679.

entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II.    Facts

The following facts are alleged in Plaintiff's Complaint and construed in the light most favorable to Plaintiff.  On September 21, 2009, Plaintiff submitted an employment application to BPU for a position as a traffic signal technician.  In October 2009, Plaintiff received orders from the United States Air National Guard ("Guard") for a two month deployment overseas.  In November 2009, Plaintiff was contacted by the BPU human resources department informing Plaintiff that he was hired.  Plaintiff informed Samuel DeLeon, the director of the human resources department, of his upcoming deployment.  DeLeon assured Plaintiff that his new position was secure and that his deployment would not affect his job status.  Upon Plaintiff's release from active military duty, Plaintiff reported to work on January 21, 2010.

As a member of the Guard, Plaintiff had a number of continuing responsibilities after his return, including periodic active deployment and mandatory attendance at training exercises.  Snyder was required to attend three, two-day training exercises in early 2010.[11]  On April 1, 2010, Defendant Clark became Plaintiff's new supervisor.  He called Plaintiff into a meeting on April 27.  Plaintiff received two performance evaluations at the meeting, one for March and one for April.  Even though Defendant Clark was hired on April 1, Defendant Clark claimed to have

---

[9]*Id.*

[10]*Id.* at 678.

[11]The first training exercise was on February 6–7, 2010. The following exercise was on March 6–7, 2010, and the final one occurred in early April.

performed Plaintiff's March evaluation and ordered Plaintiff to backdate his own signature to March 26.  Plaintiff was rated as "Unsatisfactory" in the March evaluation and received improved marks in his April evaluation.

On June 14, 2010, Plaintiff was required to miss two weeks of work because of active Guard duty.  He returned to BPU on June 28 and was fired ten days later, at a meeting with Defendants Clark and Johnson, and the HR Director.  Plaintiff filed a complaint with Veteran's Employment and Training Services ("VETS"), and during the VETS investigation BPU produced an alleged evaluation from June and new reasons for firing Plaintiff.

Plaintiff asserts that his military commitment was a substantial and motivating factor in Defendants' decision to fire Plaintiff, that such conduct violates the USERRA, and that he has suffered loss of employment, lost wages, loss of increased pay, loss of benefits, loss of future income, loss of or reduction in retirement benefits, and other general damages as a result.

## III.     Discussion

Defendants Johnson and Clark focus on a statutory construction question in their motion to dismiss.  Defendants Johnson and Clark are employed by BPU, a political subdivision of the state, and they maintain that the USERRA does not authorize suits against employees of a state political subdivision.

In addressing a statutory construction question, "we begin with the language employed by Congress, and we read the words of the statute in their context and with a view to their place in the overall statutory scheme."[12]  "Courts must 'ordinarily resist reading words or elements into

---

[12]*United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012) (quoting *Been v. O.K. Indus.,* 495 F.3d 1217, 1227 (10th Cir. 2007)) (quotation omitted).

a statute that do not appear on its face.'"[13]  "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous."[14]

The USERRA authorizes suits against employers, and an employer subject to suit under the USERRA is defined as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including . . . a State."[15]  The term employer also includes, "a person, institution, organization, or other entity to whom the employer has delegated the performance for employment-related responsibilities,"[16] so a state employee may also be an employer if the state has delegated the performance of employment-related responsibilities to the employee.  And, as a general matter, a political subdivision of a state, like BPU, is considered a state.[17]  This statutory interpretation is uncomplicated, but a separate section of the USERRA, at 38 U.S.C.A. § 4323, creates some complications.

Defendants note that in 1998, the United States Court of Appeals for the Seventh Circuit held that the USERRA was unconstitutional insofar as it permitted an individual to sue a state in federal court, violating state sovereign immunity.[18]  In 1998, Congress rectified this problem by amending the USERRA to permit the Attorney General of the United States to sue a state in

---

[13]*Id.* at 1279 (quoting *Bates v. United States,* 522 U.S. 23, 29 (1997)) .

[14]*TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001).

[15]38 U.S.C. § 4303(4).

[16]*Id.* § 4303(4)(A)(i).

[17]*Id.* § 4303(14).

[18]*Velasquez v. Frapwell*, 160 F.3d 389 (7th Cir. 1993).

federal court, in the name of the United States.[19]  An individual seeking to bring a USERRA suit against a state can bring suit in state court, where Eleventh Amendment sovereign immunity does not bar the suit, but an individual may not do so in federal court.[20]  Because political subdivisions do not have Eleventh Amendment immunity,[21] Congress did not limit federal jurisdiction when filing suit against political subdivisions: for purposes of Section 4323, Congress defined political subdivision as a private employer, not a state,[22] and under Section 4323, a suit against a private employer may be brought in federal district court.[23]  Defendants now argue that the USERRA does not allow for a suit by an individual against state employees. They base their argument on a Ninth Circuit case, *Townsend v. University of Alaska*, which found that the USERRA "does not create either an expressed or implied cause of action against individual state supervisors."[24]  But Defendants' argument fails for two reasons.

First, the plain language of the statute does not support the argument.   Under 38 U.S.C. § 4303, a political subdivision of the state is a state, a state is an employer, and, if the political subdivision has delegated employment-related responsibilities to an employee, that employee is an employer who may be sued under the USERRA.  The jurisdictional amendments, 38 U.S.C.A. § 4323, allow an individual to file suit against a private employer in federal court, and define

---

[19]38 U.S.C. § 4323(a).  An action by the United States against a state in federal court is not barred by the Eleventh Amendment.  *See United States v. Mississippi,* 380 U.S. 128, 140–41 (1965).

[20]38 U.S.C. § 4323(b)(2).

[21]*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

[22]38 U.S.C. § 4323(i).

[23]*Id.* § 4323(b)(3).

[24]543 F.3d 478, 485 (9th Cir. 2008).

political subdivisions of the state as private employers, for jurisdictional purposes.  Reading these two sections together, the employees of a political subdivision of a state are employers amenable to suit in federal district court under the USERRA.  In spite of Defendants' claims, the statutory language contains no suggestion that employees of a political subdivision are not amenable to a USERRA claim.

Second, Defendants err by trying to apply the *Townsend* holding to the facts in this case.  As the *Townsend* holding noted, "[i]t is undisputed that the University is an arm of the State of Alaska."[25]  Because the defendant in that case, the University, was an arm of the state, the University had sovereign immunity.  At first blush, this distinction does not seem significant, because the *Townsend* court did not determine that it lacked jurisdiction over a suit against employees of the state, but rather that the USERRA did not permit suits against state employees.  But nevertheless, the distinction is crucial to the *Townsend* decision.  The *Townsend* court began its analysis by noting that the

> USERRA expressly creates only two private causes of action: (1) an action brought by an individual against a State (as an employer), which as we have noted, may be brought in state court; and (2) an action brought against a private employer, which may be brought in both state and federal court.[26]

The *Townsend* court then preceded to determine whether the first type of action, an action against a state as an employer, created a right of action against state employees under the category of "a State (as an employer)."  Reasoning that "[t]he USERRA cause of action, however, arises against 'a State (as an employer),'" and that "[i]ndividual supervisors are not

---

[25]*Id.* at 481.

[26]*Id.* at 486.

included in the definition of 'State,'"[27] the Court held that the USERRA did not create an express right of action against individual state supervisors.[28] But in this case, the action arises under the second category of cases, as an action brought against a private employer. And the private employer category is not limited by as narrow a definition as the "State" category—as discussed, the employees of a political subdivision may be employers under the USERRA. Because the *Townsend* analysis presumes a state defendant, it is inapposite here.

In this case, Plaintiff has alleged that Defendants have been delegated the performance of employment-related responsibilities by BPU. On these allegations, Defendants are employers under the USERRA and so are amenable to suit in federal court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendants' Motion to Dismiss (Doc. 8) is denied.

Dated: <u>February 20, 2013</u>

<u> S/ Julie A. Robinson </u>

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[27]*Id.* (citation omitted).

[28]*Id.*